Peter H. Burke*
James Harrell
**CR LEGAL TEAM, LLP**
2400 Freeman Mill Road, Suite 200
Greensboro, NC 27406
Telephone: (366) 333-9899
phburke@crlegalteam.com
jrharrell@crlegalteam.com

Karen Hanson Riebel*
Kate M. Baxter-Kauf*
Maureen Kane Berg*
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
mkberg@locklaw.com

** Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class Counsel*

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

---

MICHAEL MESSINA, an individual on behalf of himself and all others similarly situated,

Plaintiff,

v.

D.M. BOWMAN, INC., a Maryland Corporation,

Defendant.

**COMPLAINT**

**[PROPOSED CLASS ACTION]**

**JURY TRIAL DEMANDED**

Case No.:

---

Plaintiff MICHAEL MESSINA ("Plaintiff") brings this action on behalf of himself, and all others similarly situated, against Defendant, D.M. Bowman, Inc., ("D.M. Bowman" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, and alleges as follows:

## NATURE OF THE ACTION

1. On or about July 13, 2026, D.M. Bowman, a trucking company operating multiple terminals across the eastern United States, discovered that it lost control over a company file server that held former and current employees' and applicants' highly sensitive personal records in a data breach by cybercriminals ("Data Breach").

2. On information and belief, it is unclear how long the Data Breach carried on undetected.

3. D.M. Bowman's investigations revealed that hackers gained unauthorized access to former and current employees' and applicants' confidential personal identifying information ("PII").

4. Upon information and belief, the stolen PII included former and current employees' and applicants' names, addresses, dates of birth, driver's license or commercial driver's license (CDL) numbers, employment or driver qualification file records, medical certification or examination information, and/or Social Security numbers.

5. Nearly two months after D.M. Bowman discovered the Data Breach, D.M. Bowman finally disclosed the Data Breach to its former and current employees and applicants on or around September 9, 2026 (the "Breach Notice").

6. D.M. Bowman sent a Breach Notice dated September 9, 2026 to Plaintiff Michael Messina informing him that his personal information was part of the Data Breach. ("Messina Breach Notice"). A true and correct copy of the Messina Breach Notice is attached hereto as Exhibit A.

7. When D.M. Bowman finally announced the Data Breach, it deliberately underplayed the breach's severity and stated that: "We have not identified a need to involve law enforcement in this matter at this time," even though D.M. Bowman knew cybercriminals had infiltrated its systems.

8. D.M. Bowman's failure to timely detect and report the Data Breach made its former and current employees and applicants vulnerable to identify theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

9. D.M. Bowman's failure to protect employees' and applicants' PII and adequately warn them about the Data Breach violates North Carolina law, harming thousands of former and current employees and applicants.

10. D.M. Bowman knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

11. D.M. Bowman's misconduct has injured the Plaintiff and members of the proposed Class in a number of ways, including: (i) the lost or diminished value of their PII; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's

consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive PII.

12. Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

13. Plaintiff and members of the proposed Class therefore bring this lawsuit seeking damages and relief for Defendant's actions.

## THE PARTIES

14. Plaintiff, MICHAEL MESSINA, is an adult resident and citizen of North Carolina intends to remain domiciled in North Carolina indefinitely, and maintains his true, fixed, and permanent home in North Carolina. Plaintiff Messina is a former D.M. Bowman employee and his PII was compromised by the Data Breach.

15. Defendant D.M. Bowman is a Maryland corporation with its principal place of business located at 10228 Governor Lane Boulevard Suite 3006, Williamsport, MD, 21795.

16. D.M. Bowman operates a terminal at 12801 Mount Holly Huntersville Road, Huntersville, NC 28078-7638. This is the D.M. Bowman location that employed Plaintiff Messina.

17. D.M. Bowman is registered to do business in North Carolina. Its registered agent is Scott Taylor, 95 Depot Street, Waynesville, NC 28786.

## JURISDICTION & VENUE

18. This Court has subject matter jurisdiction over this action under pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5 million, exclusive of costs and interest, there are more than 100 members in the proposed class, and at least one class member is a citizen of a different state than D.M. Bowman, establishing minimal diversity.

19. This Court has personal jurisdiction over D.M. Bowman because it is registered to do business in North Carolina and maintains a regional terminal in Huntersville, NC, where Plaintiff Messina was employed and provided his PII to Defendant at that location.

20. Venue is proper in this Court under 28 U.S.C. §§ 1391 because a substantial part of the alleged wrongful conduct and events giving rise to the claims occurred in this District and because D.M. Bowman conducts business in this District.

## COMMON FACTUAL ALLEGATIONS

### D.M. Bowman's Failure to Prevent the Data Breach

21. Plaintiff and members of the proposed Class are D.M. Bowman's current and former employees and applicants.

22. To apply for and/or obtain employment, D.M. Bowman requires its employees and applicants to provide their PII.

23. D.M. Bowman maintains records of its former and current employees' and applicants' information, including their full names, addresses, dates of birth, driver's license or commercial driver's license (CDL) numbers, employment or driver qualification file records,

medical certification or examination information, and/or Social Security numbers. These records are stored on D.M. Bowman's computer systems.

24. When D.M. Bowman collects this sensitive information, it promises to use reasonable measures to safeguard the PII from theft and misuse.

25. D.M. Bowman represented to its employees and applicants that their PII would be secure. Plaintiff and members of the proposed Class relied on such representations when they agreed to provide their PII to D.M. Bowman.

26. Despite its alleged commitments to securing sensitive employee data, D.M. Bowman does not follow industry standard practices in securing employees' and applicants' PII.

27. In July 2026, hackers bypassed D.M. Bowman's security safeguards and infiltrated its systems, giving them access to current and former employees' and applicants' PII. In response to the Data Breach, D.M. Bowman contends that it has "implemented additional security measures, including stronger authentication requirements for remote access, reduced account lockout thresholds to guard against password-guessing attacks, and expanded monitoring of our network." Ex. A. These measures should have been in place *before* the Data Breach.

28. D.M. Bowman's Breach Notice omits the size and scope of the breach. D.M. Bowman has demonstrated a pattern of providing inadequate notices and disclosures about the Data Breach.

29. On information and belief, the Data Breach has impacted thousands of D.M. Bowman current and former employees and applicants.

30. On information and belief, D.M. Bowman does not adequately train its employees on cybersecurity policies, enforce those policies, or maintain reasonable security practices and systems.

31. D.M. Bowman's negligent conduct caused the Data Breach. D.M. Bowman violated its obligation to implement best practices and comply with industry standards concerning computer system security. D.M. Bowman failed to comply with security standards and allowed its current and former employees' and applicants' PII to be accessed and stolen by failing to implement security measures that could have prevented, mitigated, or timely detected the Data Breach.

32. D.M. Bowman ultimately admitted to the Data Breach on or about September 9, 2026— nearly two months after discovering the breach. D.M. Bowman has failed to justify the delays in notifying breach victims.

33. D.M. Bowman encouraged Data Breach victims to "remain vigilant by reviewing your account statements and monitoring your free credit reports for unauthorized activity, and by promptly reporting any suspicious activity to the relevant financial institution." Ex. A. D.M. Bowman offered no monitoring or other protection.

34. As more fully articulated below, Plaintiff's and the members of the proposed Class's personal data may exist on the dark web and in the public domain for months, or even years, before it is used for ill gains and actions. With no form of insurance or other protection, Plaintiff and members of the proposed Class remain unprotected from the real and long-term threats against their personal, sensitive, and private data.

35. Therefore, Plaintiff and the members of the proposed Class have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

**Plaintiff's Experience**

36. Plaintiff Michael Messina is a former D.M. Bowman trainee and employee. He worked for D.M. Bowman only briefly in approximately October-November, 2025.

37. As a condition of applying to and working for D.M. Bowman, D.M. Bowman required Plaintiff to provide his PII, and Plaintiff indeed provided his PII to D.M. Bowman. Plaintiff provided at least his name, address, date of birth, driver's license or commercial driver's license (CDL) numbers, employment or driver qualification file records, medical certification or examination information, banking information, and his Social Security number to D.M. Bowman. Defendant assured Plaintiff that his information would be kept safe.

38. In early September 2026, Plaintiff received a notice letter from D.M. Bowman stating that his PII was compromised as a result of the Data Breach. Ex. A. The notice letter informed him that names, addresses, dates of birth, driver's license or commercial driver's license (CDL) numbers, employment or driver qualification file records, medical certification or examination information, and/or Social Security numbers were part of the Data Breach. *Id.*

39. Plaintiff has spent, and will have to spend, considerable time and effort over the coming years monitoring his accounts to protect himself from identity theft. Plaintiff's personal financial security has been jeopardized.

40. Further, Plaintiff is unsure what has happened to his PII as D.M. Bowman has been unwilling to disclose the true nature of the Data Breach.

41. Had Plaintiff known that D.M. Bowman does not adequately protect PII, he would not have transacted with D.M. Bowman. Furthermore, Plaintiff's sensitive PII remains in D.M. Bowman's possession without adequate protection against known threats, exposing Plaintiff to the prospect of additional harm in the event D.M. Bowman suffers another data breach. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

**Plaintiff and the Class Face Significant Risk of Identity Theft**

42. The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, medical information and/or other information, without permission, to commit fraud or other crimes.

43. According to experts, one out of four data breach notification recipients become a victim of identity fraud.[1]

44. As a result of Defendant's failure to prevent and timely report the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses and lost time. They have also suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

[1] *Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims*, ThreatPost.com (Feb. 21, 2013), https://threatpost.com/study-shows-one-four-who-receive-data-breach-letter-become-fraud-victims-022013/77549/ (last visited September 29, 2026).

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

45. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.[2]

46. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly on various "dark web" internet websites making the information publicly available, for a fee.

47. It can take victims years to spot identity PII theft, giving criminals plenty of time to milk that information for cash.

[2] *See* Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited September 29, 2026).

48. One such example of criminals using PII for profit is the development of "Fullz" packages.[3]

49. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

50. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that

[3] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SECURITY, (Sep. 18, 2014), *available at* https://krebsonsecurity.com/tag/fullz/ (last visited September, 2026).

Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

51. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, leading to more than $3.5 billion in losses to individuals and business victims.

52. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant did not rapidly report to Plaintiff and the Class that their PII had been stolen.

53. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

54. In addition to out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

55. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

56. The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner,

Pamela Jones Harbour, stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[4]

57. The FTC has also issued several guidelines for businesses that highlight reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[5] According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[6]

58. According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history, and reputation, and can take time, money, and patience to resolve the fallout.[7] The FTC treats the failure to employ reasonable and appropriate measures to

---

[4] Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited September 29, 2026).

[5] *Start With Security, A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited September 29, 2026).

[6] *Id.*

[7] *See* Identity Theft –A Recovery Plan, FTC (2018), 501a_idt_a_recovery_plan_508.pdf (last visited September 29, 2026).

protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

59. To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ⁋ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ⁋ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C¬4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations.

60. Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the

PII of Plaintiff and potentially thousands of members of the proposed Class to unscrupulous operators, con artists and outright criminals.

61. Defendant's failure to properly and promptly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps in an effort to mitigate the harm caused by the Data Breach.

## CLASS ACTION ALLEGATIONS

62. **Definition of the Class.** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 and DUCivR 23-1(b) on behalf of himself and all members of the proposed classes (together the "Class"), defined as follows:

> **Nationwide Class:** All individuals residing in the United States whose personal information was compromised in the Data Breach disclosed by D.M. Bowman in September 2026.
>
> **North Carolina Subclass:** All individuals residing in North Carolina whose personal information was compromised in the Data Breach disclosed by D.M. Bowman in or September 2026.

63. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

64. The Class defined above is identifiable through Defendant's business records. On information and belief, Defendant has sent the Breach Notice (Ex. A) to the members of the Class it identified through those business records.

65. Plaintiff reserves the right to amend the Class definition or add a Class if further information and discovery indicate that other classes should be added and if the definition of the Class should be narrowed, expanded, or otherwise modified.

66. Each of the proposed classes meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4):

a. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Nationwide Class and the North Carolina Subclass are so numerous and geographically dispersed that the joinder of all members is impractical. The exact number of the members of the Class is unknown but, upon information and belief, the number of Nationwide Class members is in the thousands, and individual joinder in this case is impracticable. Members of the Class can be easily identified through Defendant's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

b. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false

statements, concealment, and unlawful practices, and Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct.

c. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

d. **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2), and with 23(b)(3)'s predominance requirement, there are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and members of the Class's PII;

ii. Whether Defendant breached the duty to use reasonable care to safeguard Plaintiff's and members of the Class's PII;

iii. Whether Defendant breached its contractual promises to safeguard Plaintiff's and members of the Class's PII;

iv. Whether Defendant knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing sensitive PII;

v. Whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiff's and members of the Class's PII from unauthorized release and disclosure;

vi. Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

vii. Whether Defendant's delay in informing Plaintiff and members of the Class of the Data Breach was unreasonable;

viii. Whether Defendant's method of informing Plaintiff and other members of the Class of the Data Breach was unreasonable;

ix. Whether Defendant's conduct was likely to deceive the public;

x. Whether Defendant is liable for negligence or gross negligence;

xi. Whether Plaintiff and members of the Class were injured as a proximate cause or result of the Data Breach;

xii. Whether Plaintiff and members of the Class were damaged as a proximate cause or result of Defendant's breach of its contract with Plaintiff and members of the Class.

xiii. Whether Defendant's practices and representations related to the Data Breach breached implied warranties.

xiv. What the proper measure of damages is; and

xv. Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

e. **<u>Superiority. Fed. R. Civ. P. 23(b)(3).</u>** A class action is also a fair and efficient method that is superior to all other methods of adjudicating the controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint and would present a potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

f. **<u>Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2).</u>** Class certification is also appropriate under Rule 23(b)(2). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

g. **<u>Particular Issues. Fed. R. Civ. P. 23(c)(4).</u>** Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

67. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to information regarding which individuals were affected by the Data Breach. Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice.

## FIRST CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff incorporates all previous paragraphs as if fully set forth below.

69. Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

70. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards for data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who made that happen.

71. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C § 45, which prohibits "unfair . . .

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

72. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable time frame of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

73. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's PII for trucker training and employment purposes. Plaintiff and members of the Class needed to provide their PII to Defendant to receive training and employment from Defendant, and Defendant retained that information.

74. The risk that unauthorized persons would try to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would try to access Defendant's databases containing the PII—whether by malware or otherwise.

75. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class and the importance of exercising reasonable care in handling it.

76. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injuries.

77. Defendant also breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact.

78. As a direct and traceable result of Defendant's negligence or negligent supervision, Plaintiff, and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

79. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CLAIM FOR RELIEF

**Negligence Per Se**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff incorporates all previous paragraphs as if fully set forth below.

81. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

82. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' and applicants' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the members of the Class's sensitive PII.

83. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' and applicants' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its former and current employees and applicants in the event of a breach, which ultimately came to pass.

84. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

85. Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PII.

86. Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

87. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

88. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

89. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

90. Had Plaintiff and members of the Class known that Defendant would not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

91. As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**Breach of Contract, Including the Implied Covenant of Good Faith and Fair Dealing (On Behalf of Plaintiff and the Class)**

92. Plaintiff incorporates all previous paragraphs as if fully set forth below.

93. Defendant offered to provide goods and services to Plaintiff and members of the Class who were trucking school students in exchange for payment.

94. Defendant required Plaintiff and the members of the Class who were former and current employees and applicants to provide Defendant with their PII to receive services and/or as a condition of their employment.

95. Defendant also required Plaintiff and the members of the Class who were students to provide Defendant with their PII to receive services and training.

96. In turn, Defendant agreed it would not disclose the PII it collects from employees and applicants to unauthorized persons. Defendant also impliedly promised to maintain safeguards to protect its former and current employees' and applicants' PII.

97. Plaintiff and Class members who are or were employees or applicants accepted Defendant's offer of employment by providing their PII to Defendant.

98. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access or theft of their PII.

99. Plaintiff and the members of the Class would not have entrusted their PII to Defendant without such agreement with Defendant.

100. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly

of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

b. Violating industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement;

c. Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

101. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

102. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

103. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

104. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

105. Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

106. In these and other ways, Defendant violated its duty of good faith and fair dealing.

107. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

108. Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## FOURTH CLAIM FOR RELIEF
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

109. Plaintiff incorporates all previous paragraphs as if fully set forth below.

110. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

111. Defendant owed a duty to its current and former employees and applicants, including Plaintiff and the Class, to keep this information confidential.

112. The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

113. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant to receive trucking training services and employment, but did so privately, with the intention that

their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

114. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

115. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

116. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

117. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

118. As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

119. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

120. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

121. In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## SIXTH CLAIM FOR RELIEF
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C.G.S. § 75-1.1**
**(On Behalf of the Plaintiff and the North Carolina Subclass)**

122. Plaintiff incorporates all previous paragraphs as if fully set forth below.

123. Defendant stored the PII of Plaintiff and the North Carolina Subclass in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff and the North Carolina Subclass's PII secure and prevented the loss or misuse of that PII. As a direct and proximate result of these acts, Plaintiff's and the North Carolina Subclass's PII was accessed by unauthorized parties, subjecting Plaintiff and the North Carolina Subclass to substantial risk of identity theft and fraud and suffered other actual injuries.

124. Defendant violated § 75-1.1 of the NCUDTPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the North Carolina Subclass. These constitute unfair or deceptive acts in or that affected commerce. As a direct and proximate result, Plaintiff's and the North Carolina Subclass's PII was subject to unauthorized access and exfiltration, theft, or disclosure, causing actual injuries to Plaintiff and the North Carolina Subclass members.

125. Defendant failed to disclose to Plaintiff and the North Carolina Subclass that their PII was not secure. However, Plaintiff and the North Carolina Subclass were entitled to assume,

and did assume, that Defendant had secured their PII. At no time were Plaintiff and the North Carolina Subclass on notice that their PII was not secure, which Defendant had a duty to disclose. Defendant also failed to notify Plaintiff and the North Carolina Subclass of the Data Breach in a timely manner. As a direct and proximate result of Defendant's failures to disclose, Plaintiff and the North Carolina Subclass were prevented from taking preventative measures to protect their PII and they were subjected to substantial increased risk of identity theft and fraud and suffered other actual injuries.

126. Defendant violated § 75-1.1 of the NCUDTPA by failing to disclose to Plaintiff and the North Carolina Subclass that their data was not secure. Defendant further violated § 75-1.1 of the NCUDTPA by failing to notify Plaintiff and the North Carolina Subclass of the Data Breach in a timely manner. These failures to disclose constitute unfair or deceptive acts in or that affected commerce. As a direct and proximate result, Plaintiff and the North Carolina Subclass suffered actual injuries and they were prevented from effecting timely measures to mitigate those injuries, causing additional actual injuries.

127. Plaintiff and the North Carolina Subclass are entitled to treble damages for all damages suffered because of Defendant's violations of § 75-1.1 of the NCUDTPA. Plaintiff and the North Carolina Subclass are further entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and deceptive business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper, including injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is

particularly important because Defendant continues to hold PII, including Plaintiff's PII. Plaintiff has an interest in ensuring that his PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

## SEVENTH CLAIM FOR RELIEF

**Declaratory Judgment and Injunctive Relief**
**(On behalf of Plaintiff and the Class)**

128. Plaintiff incorporates all previous paragraphs as if fully set forth below.

129. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

130. An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

131. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII with which it is entrusted from its former and current employees and applicants, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

b. Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its former and current employees' and applicants' personal information; and

c. Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

132. The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its current and former employees' and applicants' (*i.e.*, Plaintiff's and the Class's) data.

133. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

134. The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

135. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, demands a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining D.M. Bowman from further deceptive and unfair practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest, in an amount to be proven at trial;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 6, 2026.


By: *s/James R. Harrell*
James Harrell
Peter H. Burke*
**CR LEGAL TEAM, LLP**
2400 Freeman Mill Road, Suite 200
Greensboro, NC 27406
Telephone: (366) 333-9899
phburke@crlegalteam.com

Karen Hanson Riebel*
Kate M. Baxter-Kauf*
Maureen Kane Berg*
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
mkberg@locklaw.com


** Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class Counsel*